IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIDGET B. P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-835-BT |
| | § | |
| ANDREW SAUL, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Bridget B. P.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## **Background**

Plaintiff alleges that she is disabled due to several impairments, including "depression, thoughts of suicide, headaches, back injuries, and insomnia." Def.'s Br. 5 (ECF No. 19); Administrative Record 102, 115, 129, 295, 314 ("A.R.") (ECF No. 12-1). After her application for disabled widow's benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing took place via video on January 30, 2017, with Plaintiff

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

appearing in Dallas, Texas, and the ALJ presiding over the hearing from McAlester, Oklahoma. A.R. 15. At the time of the hearing, Plaintiff was 56 years old. *Id.* 25, 74. She has a bachelor's degree, can communicate in English, and has past work experience as a secondary teacher and home attendant. *Id.* 25, 76.

The ALJ found that Plaintiff was not disabled and, therefore, not entitled to disabled widow's benefits. *Id.* 26-27. At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2013. *Id.* 17. At steps two and three, the ALJ found that Plaintiff had the severe impairments of depression and anxiety; nonetheless, the ALJ found that her impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* 18-19. At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations preventing her from performing work at a specific vocational preparation ("SVP") level greater than two. *Id.* 21. The ALJ determined that Plaintiff is unable to perform her past relevant work because its demands exceed

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

her residual functional capacity. *Id.* 25. At step five, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a motor-vehicle assembler, kitchen helper, and small-products assembler—jobs that exist in significant numbers in the national economy. *Id.* 26.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed. *Id.* 12. Plaintiff then filed this action in federal district court and argues the ALJ erred in finding her not disabled because (1) the evidence supports that her impairments meet or medically equal a listed impairment, and (2) he failed to give Plaintiff's treating physician's opinion the proper weight. Pl.'s Br. 5, 7, 12 (ECF No. 18).

**Legal Standards**

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 (quoting *Perez*, 415 F.3d at 461) ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'"). The Commissioner, and not the courts, resolves conflicts in

the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

## Analysis

### I.

Plaintiff first argues the ALJ erred by "[im]properly consider[ing] and evaluat[ing] whether Plaintiff's impairment[s] meet[ ] or equal[ ] Listings 12.04 and/or 12.06, especially since the evidence of record supports such a finding." Pl.'s Br. 7. The Court finds, however, that the ALJ's step-three finding that Plaintiff's severe impairments do not meet or medically equal a listed impairment is supported by substantial evidence.

The Social Security Administration considers the impairments included in the regulatory listings (the "Listings") so severe that they automatically preclude the claimant from substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a)). Thus, meeting an impairment in the Listings serves as a "short-cut" for the claimant, since the impairment renders her *per se* disabled. *Elam v. Barnhart*, 386 F. Supp. 2d 746, 755 (E.D. Tex. 2005) (citing

4

*Albritton v. Sullivan*, 889 F.2d 640, 642 (5th Cir. 1989); *Barajas,* 738 F.2d at 644). A claimant must establish that she satisfies all of the criteria in a Listing, including any relevant criteria in the introductory sections, in order to qualify as disabled under that particular Listing. 20 C.F.R. § 404.1525(c)(3). When a claimant's impairment is not the same as a listed impairment, the adjudicator must determine whether such an impairment is medically equivalent to a listed impairment; to determine medical equivalence, he or she evaluates whether a claimant's "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 416.929(d)(3). "An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citing S.S.R. 83-19, 1983 WL 31248 (Jan. 1, 1983)); *see also* 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." (emphasis added)). The criteria for the Listings are "'demanding and stringent.'" *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

Both Listing 12.04, depressive, bipolar, and related disorders, and 12.06, anxiety and obsessive-compulsive disorder, "have three paragraphs, designated A, B, and C." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(2). To meet the requirements of either Listing, a plaintiff's mental disorder "must satisfy the requirements of both paragraphs A and B, or . . . both paragraphs A and C." *Id.* "Paragraph A of each listing . . . includes the medical criteria that must be present in [a plaintiff's] medical evidence." *Id.* § 12.00(A)(2)(a). "Paragraph B of each

5

listing . . . provides the functional criteria . . . assess[ed], in conjunction with a rating scale . . . , to evaluate how [a plaintiff's] mental disorder limits [her] functioning." *Id.* § 12.00(A)(2)(b). "Paragraph C . . . provides the criteria . . . use[d] to evaluate 'serious and persistent mental disorders.'" *Id.* § 12.00(A)(2)(c). Because Plaintiff does not argue that her mental impairments meet the requirements of both paragraphs A and C, and instead maintains that they meet the requirements of paragraphs A and B, the Court pretermits discussion of paragraph C's requirements. *See* Pl.'s Br. 8-12.

To satisfy Listing 12.04's paragraph A criteria, a plaintiff must provide medical documentation of a depressive disorder, "characterized by five or more of the following: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.04(A)(1). A plaintiff may also meet Listing 12.04's paragraph A criteria by establishing a bipolar disorder, "characterized by three of more the following: pressured speech; flight of ideas; inflated self-esteem; decreased need for sleep; distractibility; involvement in activities that have a high probability of painful consequences that are not recognized; or increase in goal-directed activity or psychomotor agitation." *Id.* § 12.04(A)(2).

To meet Listing 12.06's paragraph A criteria, a plaintiff must provide medical documentation of either an anxiety disorder, "characterized by three or more of the following: restlessness; easily fatigued; difficulty concentrating; irritability; muscle tension; or sleep disturbance"; a panic disorder or agoraphobia, "characterized by one or both: panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces)"; or an obsessive-compulsive disorder, "characterized by one or both: involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or repetitive behaviors aimed at reducing anxiety." *Id.* § 12.06(A).

However, to satisfy both Listing 12.04 and 12.06's paragraph B criteria, a plaintiff's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b). The four areas of mental functioning are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* The ALJ evaluates a plaintiff's mental disorder in each of the four areas "based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." *Id.* § 12.00(F)(2). Mild limitation means a plaintiff's ability to function "in [that] area independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* § 12.00(F)(2)(b). Moderate limitation indicates that a plaintiff's ability to function

in a particular area "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c). Marked limitation means that a plaintiff's ability to function in an area "independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00(F)(2)(d). And extreme limitation indicates that an individual is unable "to function in [that] area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2)(e). If the ALJ finds a plaintiff's mental disorder "result[s] in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning," Listing 12.04 and 12.06's paragraph B criteria are satisfied. *Id.* § 12.00(F)(2).

Here, the ALJ found that Plaintiff's impairments do not meet either Listing 12.04 or 12.06 because they do not satisfy the paragraph B criteria applicable to both Listings. Specifically, the ALJ found that Plaintiff has "mild limitations in understanding remembering, or applying information," "moderate limitations in interacting with others," "moderate limitations with regard to concentrating, persisting, or maintaining pace," and "mild limitations in adapting or managing oneself." A.R. 19-21. The ALJ supports his finding that Plaintiff has mild limitation in understanding, remembering, or applying information by citing Plaintiff's testimony that "[s]he has a Bachelor of Science in Social Studies . . . and was a schoolteacher for approximately 25 years until she quit in 2005 to care for her husband." *Id.* 19, 431-32. He also notes, however, that "[s]he endorsed difficulty in following instructions," and in her January 31, 2015 State Agency mental status examination, Dr. Jennifer Broderick, Psy.D., found that Plaintiff's "short-term and

8

immediate memory were significantly impaired and she was a poor historian." *Id.* 19, 328, 365, 430, 434. While the ALJ took Dr. Broderick's findings into account, because he found Plaintiff had mild limitation in this area, he did not credit the findings entirely because they were "not consistent with the findings on treatment provider mental status examination, where [Plaintiff's] memory was intact, with the exception of nonspecific finding[s] on December 1, 2016[,] that her recent and remote memory were not intact," and because Dr. Broderick noted that she "suspected malingering and recommended a malingering evaluation." *Id.* 20, 420, 435, 559-60, 586. The ALJ further noted that "a field office representative recorded that when [Plaintiff] filed her claim, she presented with no issues or problems with understanding, reading, writing, and answering questions." *Id.* 20, 290-91.

The ALJ supports his finding that Plaintiff has moderate limitation in interacting with others by citing her own testimony that "she has difficulty getting along with others, but has never lost a job due to [that] difficulty"; "she has no friends, but gets along with her children"; and "she stays at home and does not go out very often due to panic attacks because of fear of being around a lot of people." *Id.* 20, 326, 328-29, 364-66, 432. However, he also noted that "she did not complain of this to her mental health treatment providers . . . , and her report is contradicted by other statements that she shops and takes her child to school." *Id.* 20, 414-22, 432, 437-43, 444-58, 467-589.

The ALJ supports his finding that Plaintiff has moderate limitations with regard to concentrating, persisting, or maintaining pace with Plaintiff's testimony

9

that "she can pay attention at most five minutes and does not finish what she starts," and Dr. Broderick's January 31, 2015 observation that Plaintiff "appeared to have significant difficulty with attention and concentration." *Id.* 20, 328, 365, 432-35. Because of suspected malingering, however, and the inconsistency of Dr. Broderick's January 31, 2015 examination findings with the December 1, 2016 treatment provider mental status examination in which Plaintiff had "normal attention and concentration," the ALJ did not credit Dr. Broderick's findings fully. *Id.* 20, 420, 435, 560, 587. Again, the ALJ also noted that "a field office representative recorded that when [Plaintiff] filed her claim, she presented with no issues or problems with coherency or concentration." *Id.* 20-21, 290-91.

Last, the ALJ supports his finding that Plaintiff experiences mild limitation in adapting or managing herself with Plaintiff's testimony that "[s]he lives with . . . [her] 18-year-old daughter and 20-year-old son," "could prepare simple meals, cares for her children, drives her children, shops, and has no difficulty managing the household finances." *Id.* 21, 323-29, 360-66, 432. Accordingly, the Court finds the ALJ's determination that Plaintiff experiences mild limitation in understanding remembering, or applying information, moderate limitation in interacting with others, moderate limitation with regard to concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing oneself to be supported by substantial evidence. Consequently, the ALJ properly concluded that Plaintiff's mental impairments do not meet the paragraph B criteria for either Listing 12.04 or 12.06.

Nonetheless, Plaintiff maintains that in making his step-three finding that Plaintiff's severe impairments do not meet or medically equal a listed impairment, the ALJ "disregard[ed] the medical evidence and all reports that support greater limitations." Pl.'s Br. 10. Plaintiff points to Dr. Broderick's January 31, 2015 examination of Plaintiff and states that her findings indicate Plaintiff "ha[d] significant difficulty understanding, carrying out and remembering simple instructions of one or two steps, . . . significant difficulty with more complex work[-]related activities[;] her social isolation and psychotic features would prevent her from maintaining effective social interactions . . . , and her current symptom profile would also make it difficult for her to deal with pressures of a competitive work setting." Pl.'s Br. 10. Plaintiff does not articulate precisely how Dr. Broderick's findings indicate that she meets Listing 12.04 and 12.06's paragraph B criteria. But, as discussed above, the ALJ did not disregard Dr. Broderick's examination findings—he considered them in his evaluation of Plaintiff's impairments under the paragraph B criteria. A.R. 20-21. While the ALJ did not reject Dr. Broderick's findings entirely, he found them inconsistent with Plaintiff's treatment provider mental status examinations. *Id.* Dr. Broderick's suspicion of malingering, however, was consistent with those treatment provider exams. *Id.*

Plaintiff also contends that the "Metrocare medical assessment of [her] ability to do work-related mental activities signed by Dr. Shahed and nurse Panchal" indicates that her mental impairments are more limiting than the ALJ found. Pl.'s Br. 10. Plaintiff summarizes that assessment and states that it

11

> indicates a diagnosis of major depressive disorder, recurrent episode, with psychotic features and unspecified anxiety disorder with a substantial loss of ability to perform the following activities: apply common sense understanding to carry out detailed but uninvolved written or oral instructions; demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; maintain concentration for extended period (being two hours); maintain attention or stay on task for an extended period (being two hours); perform at a consistent pace without an unreasonable number and length of rest periods or breaks; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers w/o unduly distracting them or exhibiting behavioral extremes; behave in an emotionally stable manner; respond appropriately to changes in a routine work setting; cope with normal work stress (even those inherit [sic] in low stress jobs) without exacerbating pathologically based symptoms; finish a normal workweek without interruption from psychologically based symptoms.

*Id.* 10-11. Plaintiff also does not explain how this evidence indicates that she has a marked or extreme limitation under the paragraph B criteria. *See id.* Nevertheless, in connection with his recitation of Plaintiff's RFC, the ALJ considered Dr. Shahed, M.D., and Anandkumar Panchal, APN's, medical source statement in which they "opined that [Plaintiff] has substantial loss of ability to perform most mental work-related activities and would be absent more than four days per month." A.R. 24, 464. The ALJ explained that he gave Dr. Shahed and nurse Panchal's opinion very little weight because "there is no indication . . . that either individual directly treated the claimant on a regular basis." *Id.* 24. And their opinion endorsed "multiple symptoms which are directly contradicted by

[Plaintiff's] repeated reports to her attending clinician. For example, they endorsed crying spells, anhedonia, low energy, chronic disturbance of mood, and chronic depression, though [Plaintiff] reported she was less depressed with more stable mood and was doing okay or . . . well." *Id.* Accordingly, the Court finds Plaintiff has not raised any medical evidence the ALJ failed to consider to demonstrate Plaintiff's impairments satisfy the paragraph B requirements under Listing 12.04 and 12.06. Because the Court finds the ALJ properly determined that Plaintiff's severe impairments do not meet or medically equal a listed impairment—specifically, they do not satisfy the paragraph B criteria for Listings 12.04 and 12.06—the Court pretermits discussion of whether Plaintiff's impairments satisfy either Listing's paragraph A criteria.

## II.

Plaintiff next argues the ALJ erred "in not giving proper consideration to the opinions of Dr. Broderick and Dr. Shahed," and that, as a result, the ALJ's "RFC assessment is not supported by substantial evidence." Pl.'s Br. 18. However, the Court finds the ALJ properly considered the medical opinion evidence and assessed Plaintiff's RFC.

With respect to claims filed before March 27, 2017, the ALJ must evaluate medical opinion evidence in the manner prescribed by 20 C.F.R. § 404.1527. Under § 404.1527(a)(1), "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

13

still do despite impairment(s), and your physical or mental restrictions." Acceptable medical sources include licensed physicians—both medical and osteopathic doctors—and licensed psychologists. 20 C.F.R. § 404.1502(a)(1)-(2). And a treating source "means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." *Id.* § 404.1527(a)(2).

Unless controlling weight is given to a treating source's opinion per § 404.1527(c)(2), an ALJ must consider the following factors in determining the weight to give to "any medical opinion": (1) the physician's examining relationship; (2) the nature and extent of the treatment relationship: length of treatment and frequency of examination; (3) the support a medical source presents for its opinion, in terms of objective evidence and explanation; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician; and (6) other factors, including a medical source's amount of understanding of "our disability programs and their evidentiary requirements." *Id.* § 404.1527(c). Medical sources other than treating sources do not carry the same "considerable weight," but they still must be considered. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008) (per curiam) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

Here, the ALJ gave partial weight to Dr. Broderick's opinion because "[w]hile she is an acceptable medical source who rendered an opinion related to

14

her specialty, she examined the claimant on only one occasion and did not have access to the Metrocare Services treating notes." A.R. 24. Accordingly, the ALJ found "the purported 'cognitive impairment' shown on Dr. Broderick's examination is not consistent with the other mental status examination findings in the record, which arguably support difficulty with more complex work[-]related activities, but do not support significant difficulty in understanding, carrying out, and remembering simple instructions of one or two steps." *Id.* Further, Dr. Broderick noted Plaintiff's "'subjective feelings of distress' and 'psychotic features' as impacting her ability to work," but the Metrocare Services notes "show [Plaintiff] reported she was doing well or okay, with no new concerns, and improvements in depressive symptoms" and that "her audio and visual hallucinations do not bother her." *Id.* Last, the ALJ also noted that Plaintiff's "reports of shopping and taking her children to school," as well as her cooperative behavior, contradict "Dr. Broderick's opinion that [Plaintiff] would be unable to maintain effective social interactions on a consistent independent basis with supervisors, coworkers, and the public." *Id.*

While the ALJ was not required to articulate his consideration of § 404.1527(c)'s factors in assigning partial weight to Dr. Broderick's opinion, because she is not a treating source, he was required to consider them in weighing the medical evidence; his explanation for assigning Dr. Broderick's opinion partial weight indicates that he did. The ALJ's above-mentioned reasons demonstrate that he considered Dr. Broderick's examining relationship with Plaintiff and

15

specialization; the support she presented for her opinion, in terms of objective evidence and explanation; and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(1)-(5).

The ALJ also appropriately considered Dr. Shahed's opinion, completed with nurse Panchal. As discussed above, he assigned their opinion little weight because "[t]here is no indication . . . that either individual directly treated the claimant on a regular basis," and their opinion endorsed "multiple symptoms which are directly contradicted by [Plaintiff's] repeated reports to her attending clinician." A.R. 24. The Metrocare Services records reflect that nurse Panchal treated Plaintiff from August 28, 2015, through January 3, 2017, but they do not indicate that Dr. Shahed ever treated Plaintiff; his name is only mentioned twice in connection with "billing." *Id.* 481-589; Def.'s Br. 13-14.

The ALJ was not required to articulate his consideration of § 404.1527(c)'s factors in assigning little weight to Dr. Shahed and nurse Panchal's opinion because there is no indication that Dr. Shahed treated Plaintiff, and nurse Panchal, as a "Licensed Advanced Practice Registered Nurse," is not an acceptable medical source with respect to claims filed before March 27, 2017. 20 C.F.R. § 404.1502(a)(7) (stating that licensed advanced practice nurses are acceptable medical sources only with respect to claims filed on or after March 27, 2017); § 404.1527(f)(1) ("Although we will consider . . . opinions [from medical sources who are not acceptable medical sources] using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing

16

opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case."). Nonetheless, the ALJ's explanation of his decision to assign little weight to their opinion indicates that he considered Dr. Shahed's treatment relationship with Plaintiff and specialization; the support they presented for their opinion, in terms of objective evidence and explanation; and the consistency of the opinion with the record as a whole. *See id.* § 404.1527(c)(1)-(5).

Because Plaintiff contends the ALJ erred in assigning partial weight to Dr. Broderick's opinion and little weight to Dr. Shahed and nurse Panchal's opinion, she also contends that the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Br. 18. But "[i]t is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam)). "'[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.'" *Id.* (brackets in original) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (per curiam)). "If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them." *Jones v. Astrue*, 851 F. Supp. 2d. 1010, 1015 (N.D. Tex. 2012) (citing *Richardson*, 402 U.S. at 390). Substantial evidence in this

context, "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Here, the ALJ did not reject Dr. Broderick's or Dr. Shahed and nurse Panchal's opinions wholesale; rather, he gave Dr. Broderick's opinion partial weight and Dr. Shahed and nurse Panchal's opinion very little weight. A.R. 24. Additionally, he gave great weight to the State Agency psychologists' opinions, finding them "to be well-supported by the longitudinal Metrocare Services treating notes." *Id.* 24-25. The State Agency psychologists "reviewed [Plaintiff's] records and found that she could understand, remember, and carry out only simple instructions; make simple decisions; attend and concentrate for extended periods; interact appropriately with coworkers and supervisors; and respond appropriately to changes in routine work settings." *Id.* 24-25, 101-11, 114-26. And while the ALJ agreed that based on Plaintiff's cooperative interaction, she is able to interact appropriately, he found "that she should have no more than occasional interaction with supervisors, co-workers, and the general public given her allegations of difficulty getting along with others and preferring to keep to herself." *Id.* 25. Accordingly, the Court concludes substantial evidence supports Plaintiff's RFC to "perform a full range of work at all exertional levels" with the non-exertional restrictions that "she is limited to work that is of SVP level 2 or less . . . with limited ability to apply commonsense understanding to remember and carry out very short and simple written or oral instructions" and that "she can make simple work-

related decisions with occasional interaction with supervisors, co-workers, and the general public." *Id.* 21.

## Conclusion

The ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act. Therefore, the hearing decision is AFFIRMED in all respects.

Signed September 30, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE